Idsley, J.
On the 26th day of February, 1864. Pierre Longis made a cession of property to his creditors, and those of the commercial firms of S. D. Gratiaa & Co. and P. Longis & Co., of which he was a member.
At a meeting ordered by the Court, in which the surrender had been made, the creditors who appeared, opposed the proceedings in insolvency, and charged Longis with fraud, and a few days thereafter, these creditors, viz: J. D. Castillo, Sazerao & Co., George Milne, F. A. Boilevint & Co., *18 Victor Wilbieu, Sos'tliene Thomas, Constant Lecoultre, Widow Prin, Lacave & Echecopar, and Widow Rozier, whose claims in the aggregate exceeded $20,000, filed in Court an opposition to the surrender made by Longis, alleging and charging:
That about the first of September, 1862, after fraudulently excluding his partner, S. D. Gratiaa, from any participation in the administration and liquidation of the firm of S. L. Gratiaa & Co., he took possession of all its assets, and within less than two months from that date, between the 1st September, 1862, and the 29th November, of the same year, concealed and fraudulently sold a large amount of goods of the firm, and took away all the cash, so that it became necessary in order to stop his further depredations, to obtain a judicial sequestration of the remaining property of the firm.
That he had failed to account in his bilan, for certain property and assets of the firm of which a detailed statement is furnished by the opponents, and which amount in the aggregate to the sum of $50,163, the opponents charging that he had fraudulently concealed the said assets, and appropriated them to his own use and benefit.
That in order the more effectually to conceal his frauds, he had taken away important documents and books of the firm, among others the “ blotter,” on which the last sales of goods were noted, and not posted up in the journal and ledger.
The opponents therefore prayed that Longis be declared guilty of fraud, and forever deprived of the benefit of the insolvent laws, and that he be subjected to the penalties provided by the 19th, 20th, 21st, 22d and 21th, sections of the act relative to voluntary surrenders, approved March 15th, 1855, and they further prayed that he be arrested and imprisoned, until he should give bond in conformity with section 22d of the said act.
The Court ordered that the insolvent be arrested, until he should give bond in the sum of $60,000, conditioned that he should appear to answer the charge of fraud, and abide the final order of the Court thereon.
Longis was accordingly arrested and takeninto the custody of the sheriff. Shortly after, he took a rule to have the arrest set aside. Failing in this, in July, 1865, he presented a petition to the Court, no longer presided over by the Judge who had issued the order of arrest, and alleging that he had been imprisoned some fifteen months, and that the bail of $60,000 required of him was excessive, asked that it be reduced to $10,000. This request appears to have been granted ex parte, and Longis having furnished a bond for the said sum, was released from custody.
On the 14th November, 1865, he waived the jury, and proceeded to trial.
It appears from the evidence adduced by the opponents, that on the 29 th November, 1862, S.D. Gratiaa filed a petition against Longis, alleging that his partnership with the latter had expired on the 1st September, 1862; that since that date Longis had unjustifiably excluded him from any participation in the administration and liquidation of the firm, and had taken exclusive possession of all the assets, and books and papers of the firm, and had already appropriated a large portion of the assets to his own personal use and benefit, to the detriment and injury of petitioner and the creditors; that he had published in the newspapers that he was *19 the sole liquidator of the firm, and alone entitled to collect and receive what was due to it; that in order to protect the partnership property from further depredations, it was necessary that a liquidator be appointed, and that the remaining assets and the books of the firm be sequestered.
The writ of sequestration accordingly issued, and an inventory of tho property sequestered was, by order of Court, taken by a notary and two appraisers, which showed goods and merchandise to an amount of $9,986, a portion of which goods appears to have been returned to parties who had sent them to the firm to be sold on commission.
It seems that five or six days after the writ of sequestratiou had issued, Longis disappeared, so that the creditors knew not what had become of him.
One of the witnesses who had formerly been his partner, declares that “ although he was very intimate with Longis, the latter did not tell him that he was going away.”
Still, exceptions were presented by counsel in his behalf, with a view of having the sequestration set aside.
Among the reasons given by the Judge for dismissing the exceptions, he says: “It is also proved that since the institution of this suit, the defendant has absented himself, and has not since been seen.”
After the dismissal of his exceptions, Longis filed no answer, and on the motion to confirm the default, the Court on the 17th March, 1863, declared the allegations in the petition of Gratiaa to be fully proved by the testimony adduced, and accordingly appointed a liquidator to the partnership.
Meanwhile an attempt was made by one E. Goss, who filed a third opposition to have a considerable portion of the goods sequestered delivered up to him, pretending that he was the owner of the same.
The Judge, in passing upon this opposition, says: “ Erom all the facts and circumstances disclosed by the evidence, I am forced to the conclusion that the pretended sale set up by him, (Goss) is only an attempt to assist Longis in concealing the property of the partnership from the pursuit of his partner, as well as from the creditors of the firm.”
Longis appears to have remained absent about thirteen months. He returned to this city in January, 1864, and shortly thereafter, filed his bilan.
It is shown that there were about $20,741 in the iron safe of the firm at the time Longis took exclusive possession of the assets in September, 1862; $16,780 wore in Confederate notes; and that he also took possession of some $15,000 worth of mortgage notes. None of these assets were carried on his bilan. After an imprisonment of seven months, the insolvent requested his friend, Comors, to whom he had confided the keeping of the mortgage notes, to deliver them up to the attorney of the syndic, and they were accordingly handed over to the latter.
On or about the 3d May, 1865, the syndic having been informed that Longis had on the trial of a case in the Second District Court, produced, by order of the said Court, one of the books which he had withheld from his creditors, to wit: the blotter, mentioned in the petition of the opponents, procured a writ of sequestration, by virtue of which the sheriff took possession of the said blotter.
*20 An examination of this book shows that the entries therein, from the 14th to the 30th November, 1862, those from A. to H., were not carried into the journal or ledger.
These entries are as follows:
On the 14th November, 1862, cash received from A. Bias. 5 20 25
Cash received from J. J. Clark........................ 25 30
Cash received from J. Hawkins....................... 819 00 $ 864 55
On the 15th November, cash from Denechaud................. 28 00
On the 17th November, cash received from Citizens’ Bank..... 6-14 00
Cash received from Lapeyrollerie............................. 600 00
On the 20th November, cash received from same.............. 1123 00
On the 25th “ “ “ “ Galpin............. 36 00
On the 29thBovember, cash received from Lapeyrollerie.......57,000 00
Making total amount from 14th to 25th November----•......54,295 55 And on the next day, the 30th, are the following entries:
Cash taken out by P. Longis................................. 4,295 55
Cash taken out by P. Longis, in Confederate notes............ 16,780 00
Total amount taken by Longis on the 30th November, 1862... .521,075 55
Letters of Longis, written a short time previously, show that these Confederate notes were from 35 to 40 per cent, below par.
It no where appears that his creditors, the wine and liquor merchants, who forwarded their merchandise to be sold by the firm, authorized the sale of their goods for Confederate notes; and it is urged that to allow Longis to go unpunished after taking these Confederate notes, and using them for his own benefit, as he appears to have done, without giving any account of the same to his creditors, when he himself declared them to be worth, at the time, at the least sixty cents on the dollar, would be to hold out a reward to dishonesty and bad faith. !
The creditors, who are blameless, it is urged, cannot be punished for his illegal acts, and in support of this position against Longis, the case of Mrs. Luzenberg against Cleveland, lately decided, is relied upon; the doctrine therein taught we adhere to, and could apply, if this wore a suit against Longis for the recovery of the amount of property sold by him ■without authority for that kind of currency.
But as this Court lately hold in Cockburn v. Wilson, we do not consider that Confederate notes, and the abstraction or conversion to her use, of any such an illegal issue, can in law be deemed a fraud.
A careful examination of the record has satisfied us that the charges of fraud against Pierre Longis, have been otherwise abundantly proved; and as the case was, at the request of the defendant, Longis, tried by the Judge of the lower Court, and not by a jury (see page 256, R. S., section 27,) we might, if the law under which the proceeding is had, is not repealed by the National Bankrupt law, finally dispose of the case.
On this point, we adhere to our decision in the case of Meekins, Kelly & Co. v. Their Creditors, not yet reported, in which we held that where proceedings had been commenced under the State insolvent laws, they stood unaffected by the United States Bankrupt law; and we now hold, that where the penal clauses of the State insolvent laws can be made operative, effect must be given to them.
*21 The penalties prescribed by the 27th section of the ‘"'act relative to voluntary surrenders,” approved March 15th, 1855, R. S. p. 256, are that the insolvent debtor convicted of fraud, shall forever be deprived of the benefit of laws passed in favor of insolvent debtors in this State, and shall be sentenced to imprisonment for a term not exceeding three years.
This State insolvent law has no vitality, except for such cases as were pending under it, in the State Courts, before the passage of the United States Bankrupt law, which, otherwise, repealed all State insolvent laws.
It would be, therefore, a vain thing to do more than to deprive the defendant of the benefit of the insolvent law of 15th March, 1855, in tho present preceeding, which he has no legal right to invoke. It is otherwise with the second penal clause, which under the said State law, can be legally applied by the Court.
In the exercise of its legal discretion, the Court will mitigate the sentence of imprisonment.
It is therefore ordered, adjudged and decreed that the judgment of the lower Court be annulled, avoided and reversed; and proceeding to give such a judgment as should have been rendered by the Court below, it is now ordered, adjudged and decreed that the said Pierre Longis, having been guilty of fraud under the sections 19 and 20 of the act relative to voluntary surrenders, approved 15th March, 1855, that he be deprived in this proceeding of the benefit of that law, and that he be imprisoned in the parish jail of Orleans for the term of six months, and that he pay the costs of opposition in both courts.
Rehearing refused.